**COMMONWEALTH of Pennsylvania,**
**Appellee**

**v.**

**Larry GUESS, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 8, 2012.

Filed Sept. 13, 2012.

Reargument Denied Nov. 28, 2012.

Ethan O'Shea, Lansdale, for appellant.

Robert M. Falin, Assistant District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: SHOGAN, J., LAZARUS, J., and PLATT, J.*

OPINION BY LAZARUS, J.

Larry Guess appeals from the order entered in the Court of Common Pleas of Montgomery County denying his petition pursuant to the Post Conviction Relief Act ("PCRA").[1] We affirm.

The relevant facts are as follows. Brandon Krupka was a resident of apartment M–101 at Wissahickon Apartments, in Landsdale, Pennsylvania. On August 28, 2008 at approximately 12:22 p.m., Krupka heard a knock at his door, which was secured with a deadbolt. As Krupka walked toward the door, he heard the doorknob "jingle" and saw that pressure was being applied on the door as if someone was trying to pry the door open. Believing someone was trying to get into the apartment, Krupka ran back into his bedroom and grabbed a baseball bat. He then stood away from the door and watched as it shook for about 10 to 15 seconds.

When the shaking stopped, Krupka looked through the peephole and saw two black males in the hallway trying to enter the apartment next door in the same manner. Krupka observed one of the males wearing a white t-shirt, and the other wearing a black jacket.

Continuing to look through the peephole, Krupka saw the two males knocking on doors, turning the knobs and trying to "nudge" their way into other apartments. Krupka testified that the two males unsuc-

---

* Retired Senior Judge assigned to the Superior Court.

1. 42 Pa.C.S.A. §§ 9541–9546.

cessfully attempted to gain access to at least three other apartments. Krupka called 911 to report an attempted burglary after he saw the two men attempt to enter the third apartment.

Within 10 minutes, Lansdale police, including plain-clothes Detective Justin DiBonaventura, responded to the report of a burglary in progress at the apartment complex. The report described the suspects as two black males, one wearing a white t-shirt, and the other wearing a black jacket, and stated that they had last been seen in the area of "M" building.

Detective DiBonaventura positioned himself outside "M" building near his unmarked vehicle and a marked police cruiser while three uniformed officers went inside the building. Moments later, Detective DiBonaventura saw two black males, later identified as Guess and Kevin Jordan, coming from a grassy area between buildings "M" and "N." Guess was wearing a white t-shirt and Jordan a black jacket. Guess and Jordan began to walk away "rapidly," looking back frequently in the direction of Detective DiBonaventura and "M" building.

Detective DiBonaventura drove his vehicle across the parking lot toward Guess and Jordan. From inside his vehicle, Detective DiBonaventura identified himself as being with the Lansdale Police Department, and inquired of the two men whether they lived at the apartment. They responded that they did not live there, but were on the premises to visit a friend. When asked to provide the name of the friend, Guess and Jordan did not respond.

Detective DiBonaventura exited his vehicle and asked the men if he could speak with them. During this interaction, Guess dropped a credit card. Detective DiBonaventura retrieved the card, which bore the name Ramana Kumar. Upon seeing that the card did not belong to Guess, Detective DiBonaventura patted Guess down for officer safety. During the pat-down, Detective DiBonaventura recovered various pieces of jewelry from Guess' pockets [2] as well as plastic hotel placards that were marked along the edges. Detective DiBonaventura placed Guess and Jordan under arrest.[3]

Police charged Guess with burglary (Apt.M–204),[4] conspiracy to commit burglary,[5] attempted burglary (Apt.M–101),[6] possession of an instrument of crime,[7] criminal trespass (Apt.M–204),[8] identity theft,[9] theft by unlawful taking [10] and receiving stolen property (credit card of Kumar).[11] Guess proceeded to a jury trial on November 4, 2009. On November 5, 2009, the jury found Guess guilty on all charges except identity theft, which the trial court dismissed at the close of the evidence.

The trial court sentenced Guess on January 15, 2010 to a mandatory term of 25 to 50 years' imprisonment pursuant to 42 Pa.

---

**2.** The jewelry included a gold ring, two silver rings, a gold bracelet and a gold and silver watch. The police were not able to ascertain the owners of these pieces of jewelry.

**3.** Jordan subsequently plead guilty to the charge of burglary.

**4.** 18 Pa.C.S.A. § 3502.

**5.** 18 Pa.C.S.A. § 903.

**6.** 18 Pa.C.S.A. § 901.

**7.** 18 Pa.C.S.A. § 907.

**8.** 18 Pa.C.S.A. § 3503.

**9.** 18 Pa.C.S.A. § 4120.

**10.** 18 Pa.C.S.A. § 3921.

**11.** 18 Pa.C.S.A. § 3925.

C.S.A. § 9714(a)(2).[12] Guess filed a timely post-trial motion which the court denied by order dated January 25, 2010. Guess filed a direct appeal on February 4, 2010; this Court affirmed the judgment of sentence on December 2, 2010. The Supreme Court of Pennsylvania denied Guess' petition for allowance of appeal.

On June 9, 2011, Guess filed a *pro se* PCRA petition. The PCRA court appointed Ethan O'Shea, Esquire, to serve as PCRA counsel. Guess, through counsel, filed an amended PCRA petition on December 28, 2011. After a hearing, the PCRA court denied the amended petition in an order dated January 9, 2012. Guess filed a timely notice of appeal and complied with the PCRA court's order to file a statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b). Guess raises three issues for our review:

1. Whether trial counsel was ineffective for failing to move to suppress evidence obtained through [Guess'] illegal search and seizure.

2. Whether trial counsel was ineffective for failing to object to the Commonwealth's introduction of jewelry found on [Guess] into evidence.

3. Whether trial counsel was ineffective for failing to object to the Commonwealth's introduction of [Guess'] pre-arrest silence at trial.

Brief of Appellant, 8/8/12, at 4.[13]

Our standard of review is well-settled:

In reviewing the propriety of [a] PCRA court's order, we are limited to determining whether the court's findings are supported by the record and whether the order in question is free of legal error. The PCRA court's findings will not be disturbed if there is any support for the findings in the certified record. *Commonwealth v. Grant*, 992 A.2d 152, 156 (Pa.Super.2010) (internal citations and quotations omitted).

■ To be eligible for relief under the PCRA for ineffective assistance of counsel, the petitioner must plead and prove that the ineffective assistance "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii). To meet this standard, "[t]he petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Anderson*, 995 A.2d 1184, 1191–92 (Pa.Super.2010) (internal quotations omitted).

Guess first argues that trial counsel was ineffective for failing to argue that the evidence should be suppressed because the police unlawfully detained Guess prior to his arrest. Specifically, Guest avers that his interaction with Detective DiBonaventura escalated to an "investigative detention" that was not supported by reasonable suspicion of criminal activity. We disagree.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. *Commonwealth v. Pratt*, 930 A.2d 561, 563 (Pa.Super.2007).

---

**12.** *See* 42 Pa.C.S.A. § 9714(a)(2) (requiring minimum sentence of 25 years' confinement where "person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions").

**13.** We have renumbered Guess' issues for ease of disposition.

Fourth Amendment jurisprudence has led to the development of three categories of interactions between citizens and police. The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Hudson,* 995 A.2d 1253, 1256–57 (Pa.Super.2010).

■■■ "A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen." *Commonwealth v. Coleman,* 19 A.3d 1111, 1115 (Pa.Super.2011). "In determining whether an interaction should be considered a mere encounter or an investigative detention, the focus of our inquiry is on whether a 'seizure' of the person has occurred." *Commonwealth v. Cooper,* 994 A.2d 589, 592 (Pa.Super.2010) (citation omitted).

Our Supreme Court has adopted an objective test for determining whether a police officer has restrained the liberty of a citizen such that a seizure occurs. The pivotal inquiry in making this determination is whether a reasonable [person] innocent of any crime, would have thought he [or she] was being restrained had he [or she] been in the defendant's shoes. A Court must examine all surrounding circumstances evidencing a show of authority or exercise of force, including the demeanor of the police officer, the manner of expression used by

the officer in addressing the citizen, and the content of the interrogatories or statements. If a reasonable person would not feel free to terminate the encounter with police and leave the scene, then a seizure of that person has occurred.

*Commonwealth v. Key,* 789 A.2d 282, 288–89 (Pa.Super.2001) (citations and quotations omitted).

Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might by compelled.

*Commonwealth v. McClease,* 750 A.2d 320, 324–25 (Pa.Super.2000) (quoting *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)).

Recently, in *Coleman, supra,* this Court considered whether a street encounter between officers and a citizen was a mere encounter or an investigatory detention. Philadelphia police officers responded to a radio call reporting a robbery in progress and providing information regarding the persons involved. *Id.* at 1114. The officers arrived in a police van and spotted the defendant on the street fitting the description in the report. The officers asked the defendant if he had a gun; he responded "no," but at the same time put his hand in his pocket to adjust an unknown object. The defendant refused the officers' request to take his hand out of his pocket and a struggle ensued. The officers subsequently recovered two knives and arrested the defendant. *Id.*

The trial court convicted the defendant of resisting arrest and possession of prohibited offensive weapons. In his appeal

to this Court, the defendant argued "that the initial approach and questioning by the police was an investigative detention that was not supported by reasonable suspicion." *Id.* at 1115. Our Court disagreed, finding that the approach of the officer was a mere encounter and that the request to take his hand out of his pocket did not elevate the encounter to an investigative detention because it was justified by officer safety. *Id.* at 1116–17. Thus, this Court concluded that "[the defendant] was not seized until [the officer] grabbed his arm and tried to move him to the police car." *Id.* at 1117.

■■ Here, like *Coleman,* the initial approach and questioning by Detective DiBonaventura of Guess was a mere encounter. Detective DiBonaventura approached alone, did not make any verbal command for Guess to stop and did not impede his movement. Rather, Detective DiBonaventura merely identified himself and asked if Guess was willing to speak with him. Accordingly, a reasonable person would still have felt free to terminate the encounter during the initial approach and questioning. *See Key, supra; McClease, supra.*

■■ However, when Detective DiBonaventura conducted a pat-down search of Guess, the encounter escalated into an investigatory detention. *See Coleman, supra.* In order to justify a pat-down search, or Terry [14] stop, the officer must have reasonable suspicion, under the totality of the circumstances, that criminal activity is afoot and that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry,* 392 U.S. at 24, 88 S.Ct. 1868; *Commonwealth v. Guzman,* 44 A.3d 688, 693 (Pa.Super.2012). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Commonwealth v. Simmons,* 17 A.3d 399, 403 (Pa.Super.2011).

Here, we conclude that the investigatory detention was supported by reasonable suspicion of criminal activity and a justifiable belief in the need to protect officer safety. Both Guess and his co-conspirator matched the physical description given by the victim of two black males, one wearing a white shirt and the other a black jacket, and they were located within the apartment complex where the crimes took place. Detective DiBonaventura testified that these were the only males in the complex that fit the description. Further, when Detective DiBonaventura approached Guess, he testified that Guess appeared nervous and anxious to run. *See Commonwealth v. Foglia,* 979 A.2d 357, 361 (Pa.Super.2009) (nervous or evasive behavior is relevant in reasonable suspicion determination). In addition, when Detective DiBonaventura questioned Guess as to what he was doing at the apartment complex, he said that he was visiting a friend, but did not provide a name. [15] Finally, Guess dropped a credit card that displayed a name different from his own or his co-conspirator's. Given these circumstances,

14. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

15. While a person's silence may not be used as substantive evidence of guilt at trial, *see Commonwealth v. Molina,* 33 A.3d 51, 62 (Pa.Super.2011) *(en banc), appeal granted,* —— Pa. ——, 51 A.3d 181 (2012), our courts have not held that such silence may not be considered by an officer under the totality of the circumstances, especially where such silence is not accompanied by an express invocation of the right. *See also Berghuis v. Thompkins,* —— U.S. ——, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010) (mere silence by accused does not provide unambiguous signal to police that accused has invoked Fifth Amendment protections).

together with the fact that there was an alleged burglary, Detective DiBonaventura was justified in believing that criminal activity was afoot and that a pat-down search was necessary for officer safety. *See Terry, supra,* 392 U.S. at 27–28, 88 S.Ct. 1868 (suspect in daytime robbery likely to be in possession of weapons). Accordingly, Guess has failed to satisfy his burden of proving that the underlying claim is of arguable merit or that the outcome at trial would have been different had counsel filed a suppression motion. *See Anderson, supra.*

■ Guest next argues that trial counsel was ineffective for failing to object to the Commonwealth's introduction into evidence of the jewelry recovered from his person. Guess avers that the evidence was both irrelevant and unfairly prejudicial under Pennsylvania Rules of Evidence 402 and 403 because the Commonwealth never established where the jewelry came from and none of the residents of the apartment complex claimed the jewelry.[16]

During Guess' PCRA hearing, counsel stated that her strategy at trial was to challenge the sufficiency of the evidence presented by the Commonwealth. *See* N.T. PCRA Hearing, 2/1/12, at 35. By not objecting to the Commonwealth's introduction of the jewelry, counsel was able to further her argument by showing that the Commonwealth failed to prove that the items were stolen and that no one from the apartment complex claimed them as their own. Thus, Guess has failed to meet the second prong of an ineffectiveness claim, requiring him to show that trial counsel lacked a strategic basis for her actions. *See Anderson, supra; Commonwealth v. Chmiel,* 612 Pa. 333, 30 A.3d 1111, 1127

(2011) (trial counsel will not be found ineffective where strategic decisions had reasonable basis).

■ In his final issue, Guess argues that trial counsel was ineffective for failing to object to the Commonwealth's introduction of Guess' pre-arrest silence. Guess points to the fact that the Commonwealth mentioned that Guess could not give a response to Detective DiBonaventura when asked whom he was visiting. Guess' silence was first referenced by the Commonwealth during direct examination of Detective DiBonaventura, who testified as follows:

[Prosecutor]: And what did you say specifically to [Guess]?

[Detective DiBonaventura]: Do you live on the complex or at the complex or are you visiting anyone at the complex?

\*　　\*　　\*

[Prosecutor]: And what was his response, if any?

[Detective DiBonaventura]: No, they did not live at the complex. They were visiting a friend.

[Prosecutor]: ... Detective, did you have any follow-up questions?

[Detective DiBonaventura]: I asked them who they were visiting and what building they were visiting that person or persons in.

[Prosecutor]: And was there any response from the [Guess].

[Detective DiBonaventura]: They didn't have a response. They didn't have a name or a building to give me.

N.T. Trial, 11/4/09, at 107–08. During closing arguments, the Commonwealth again referenced Guess' silence stating:

---

**16.** *See* Pa.R.E. 402 ("Evidence that is not relevant is not admissible."); Pa.R.E. 403 (Even if relevant, evidence may nevertheless "be excluded if its probative value is out-

weighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury[.]").

"[Detective DiBonaventura] identifies himself as a police officer. He says that he's looking into, investigating a report of burglary, whether [Guess and his coconspirator] have seen anything, asks [Guess] what's he doing there. **[Guess] can't give a name of anyone that he's visiting there.**" *Id.* at 196 (emphasis added). In both instances, Guess' counsel did not object to the Commonwealth's use of Guess' silence.[17]

"Both the United States Constitution and the Pennsylvania Constitution protect every person against being compelled to be a witness against himself or herself." *Molina, supra* at 57; *see* U.S. Const. amend. V; Pa. Const. art. I, § 9. This privilege protects a defendant from being compelled to speak before arrest. *See Molina, supra* at 57. Further, the privilege prohibits the prosecution from using "a non-testifying defendant's pre-arrest silence to support its contention that the defendant is guilty of the crime charged as such use infringes on a defendant's right to be free from self-incrimination." *Id.* at 62. However, this rule "'does not impose a *prima facie* bar against *any* mention of a defendant's silence' but rather 'guard[s] against the exploitation of [a defendant's] right to remain silent by the prosecution.'" *Commonwealth v. Adams*, 39 A.3d 310, 318 (Pa.Super.2012) (quoting *id.* at 63) (emphasis in original). Thus, "the mere revelation of a defendant's pre-arrest silence does not establish innate prejudice [where] it was not used in any fashion that was likely to burden defendant's Fifth Amendment right or to create [an] inference of

admission of guilt." *Id.* 318 (quoting *Molina, supra* at 56).

In *Molina*, detectives were investigating the defendant's involvement in the disappearance of another individual ("the victim").[18] The defendant contacted a detective, who asked him to come down to the police headquarters; the defendant refused. During trial, the detective mentioned that the defendant had refused to go to the station to discuss the case. During closing, counsel for the Commonwealth again referenced the defendant's silence, stating:

> But most telling, I think, is the fact that the [detective] invited [the defendant]. "Well, come on down and talk to us. We want to ask you some more questions about this incident, your knowledge of [the victim]," especially because [the defendant had] made ... contradictory statements. And what happens? Nothing happens. He refuses to cooperate with the Missing Persons detectives. And why?

*Molina, supra* at 55 (emphasis removed).[19] The Commonwealth continued: "Factor that in when you're making an important decision in this case as well." *Id.*

In analyzing the legality of the prosecution's closing argument, this Court noted that the detective's testimony regarding the defendant's silence did not violate his right to silence because the "testimony was originally offered to denote the extent and focus of the police investigation with re-

---

17. While Guess' counsel originally did object during direct examination of Detective DiBonaventura to the Commonwealth's question "Was [Guess] able to give an answer to a friend's name," *see* N.T. Trial, 11/4/09, at 107, the objection was only as to the form of the question being leading, not that it was an impermissible use of Guess' silence in violation of the Fifth Amendment.

18. The victim's body was later recovered and Molina was charged, *inter alia*, with third-degree murder.

19. Defense counsel objected to the Commonwealth's use of the defendant's silence, but was overruled. *Molina, supra* at 55.

gard to [the victim's] disappearance." *Id.* at 56. This Court added:

> In this situation, the reference to silence was not used in any fashion that was likely to burden [the defendant's] Fifth Amendment right or to create an inference of an admission of guilt. . . .
>
> We find that the detective's testimony was originally offered for one narrow purpose—the extent and focus of the investigation relating to [the victim's] disappearance.

*Id.* In contrast, the prosecution's use of the silence in closing was not limited to such narrow purpose. The theory set forth by the Commonwealth "was that [the defendant] must have committed the murder before the police talked with him; otherwise he would not have refused to talk about a missing person." *Id.* at 66. Thus, the Commonwealth attempted to use the defendant's silence against him by implying that his decision to remain silent was evidence of his guilt. *See id.*

Following this Court's *en banc* decision in *Molina*, a panel of this Court again considered the scope of a defendant's right to remain silent in *Adams, supra.* There, police were investigating the defendant's involvement in a burglary and homicide. Police requested an interview with the defendant, but he declined. The defendant was subsequently arrested and proceeded to a jury trial. At trial, the Commonwealth questioned one of the investigating officers regarding his contact with the defendant. The officer testified that he attempted to interview the defendant and stated that the defendant "didn't want to speak to us at that time." *Adams, supra* at 315. During closing arguments, both defense counsel and the Commonwealth referred to the defendant's initial refusal

to speak. Defense counsel argued that the defendant may have chosen to remain silent because he either didn't like talking to police, was afraid of being perceived as a "snitch," simply didn't have any information or was aware of his right to remain silent. *Id.* at 320. The Commonwealth, in turn, responded that if the defendant had an alibi defense, it would be irrational for him to not speak to police, and asked the jury to think critically of his silence. Defense counsel did not object to the Commonwealth's closing statements.

On appeal, the defendant argued that, in light of *Molina*, his constitutional right to remain silent had been violated by the Commonwealth during direct examination of the police officer and again during closing. Upon review, this Court determined that the officer's testimony did not violate the defendant's right to remain silent because the testimony regarding the defendant's silence "was offered for a narrow purpose, namely to demonstrate the nature and focus of the investigation, and as foundational evidence demonstrating how the police came to obtain [the defendant's] DNA sample, which was later admitted into evidence at trial." *Id.* at 319. As to the Commonwealth's closing statements, we determined that they were permissible because defense counsel had himself "made a tactical decision to comment on [the defendant's] pre-arrest during closing argument." *Id.* at 320 (citing *Commonwealth v. DiNicola*, 581 Pa. 550, 866 A.2d 329, 337 (2005) ("there is no Fifth Amendment proscription precluding the raising of [a defendant's pre-arrest] silence in fair response to defense argumentation."))[20] Thus, we determined that the defendant was not entitled to relief on appeal.

---

**20.** This Court also noted that the defendant had "arguably waived" his challenge on appeal to the Commonwealth's closing arguments because counsel did not object at that time. *See Adams, supra* at 319.

Here, as in *Molina* and *Adams,* the initial reference to Guess' silence by Detective DiBonaventura on direct examination was offered for the narrow purpose of describing the extent and focus of his investigation, not as substantive evidence of guilt. Detective DiBonaventura's revelation of silence was limited to describing his encounter with Guess and the steps he took in conducting his investigation. Thus, the reference did not violate Guess' right to remain silent, and Guess' counsel was not ineffective for failing to object to the statement as a violation of Guess' Fifth Amendment rights. *See Molina, supra* ("mere revelation of … defendant's prearrest silence does not establish innate prejudice [if] not used in any fashion … likely to burden defendant's Fifth Amendment right").

■ However, the Commonwealth's reference to Guess' silence in closing was not offered for a similarly narrow purpose; instead, it was used as substantive evidence of guilt. By arguing to the jury that Guess *"can't* give a name of anyone that he's visiting," N.T. Trial, 11/4/09, at 196 (emphasis added), the Commonwealth drew an impermissible conclusion that Guess' decision not to respond to questions equated to an inability to answer. In doing so, the Commonwealth induced the jury to interpret Guess' silence as a *de facto* admission of guilt. By not objecting to this statement, Guess' counsel did not give the trial court an opportunity to correct the error and forfeited Guess' right to raise the issue on direct appeal. Accordingly, the Commonwealth's reference violated Guess' right to remain silent and Guess' trial counsel did not have a strategic reason for failing to object to its introduction. *See Molina, supra* (prosecutor's theory at closing that defendant was guilty because he refused to speak with police

violated Fifth Amendment right to silence).

■ In order to show that counsel was ineffective, however, Guess must demonstrate that the outcome of the trial would likely have been different had counsel objected to the Commonwealth's closing argument. *See Commonwealth v. May,* 587 Pa. 184, 898 A.2d 559, 575–76 (2006). We conclude that Guess has failed to meet this burden.

At trial, the Commonwealth introduced evidence, through the testimony of Krupka, that Guess and his co-conspirator matched the physical description of the persons he saw attempting to burglarize apartments. Further, Detective DiBonaventura testified that Guess and his co-conspirator were the only two individuals he saw at the apartment complex that matched the description provided. When Detective DiBonaventura approached Guess, he stated that Guess appeared nervous and anxious to leave. This uneasiness was evidenced by the fact that Guess dropped the credit card, which displayed the name of another individual. Finally, when Guess was searched, police discovered jewelry, which did not appear to be his own, as well as hotel placards with markings that indicated they were used to attempt to "jimmy" the locks on the apartment doors. When viewed together, this evidence established substantial proof of guilt such that the Commonwealth's single misuse of Guess' silence was unlikely to have altered the verdict.

Order affirmed.

SHOGAN, J., concurs in the result.