J-S14028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NICHOLAS C. KOVATTO, | : | |
| | : | No. 2059 EDA 2017 |
| Appellant | : | |

Appeal from the Judgment of Sentence May 25, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0000450-2016

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED MAY 11, 2018**

Nicholas C. Kovatto appeals from the judgment of sentence entered following his jury trial convictions for homicide, possession of a controlled substance with intent to deliver, persons not to possess firearms, and three counts each of receiving stolen property and possessing instruments of crime.[1] Kovatto claims the trial court erred in denying his motion to sever the firearm and drug charges from the homicide charge and in denying his motion for a mistrial after the Commonwealth presented evidence of his pre-arrest silence. We affirm.

_____

*   Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2501(a), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. §§ 6105(a)(1), 3925(a), and 907(a), respectively.

The trial court set forth the facts and procedural history, which we adopt and incorporate herein. Trial Court Opinion, filed Sept. 21, 2017, at 1-7.[2]

Kovatto raises the following issues on appeal:

A. Did the trial court err in denying [Kovatto's] motion for severance of the gun and drug charges from the homicide charge filed against him?

B. Did the trial court err in denying [Kovatto's] motion for a mistrial when the Commonwealth presented evidence in which [Kovatto] exercised his Fifth Amendment right to remain silent?

Kovatto's Br. at 4 (unnecessary capitalization and trial court answers omitted).

Kovatto first maintains the trial court erred in denying his motion to sever the firearm and drug charges from the homicide charge. He argues that the Commonwealth presented no evidence that the victim owed Kovatto money or that the victim used drugs. Consolidating the charges forced Kovatto to explain why the drugs had no connection to the homicide. He further argues there was no evidence that he possessed the firearm found at the location of the homicide. Although acknowledging that one of the guns found at his residence was stolen at the same time as the firearm used in the homicide, he claims that allowing evidence of the firearms found at his residence forced him to "explain possession of guns that had no connection with the homicide." Kovatto's Br. at 13. He claims that the jury was "left to speculate" that he

---

[2] The trial court opinion cites the March 16, 2017 transcript to support that it received evidence of Kovatto's prior conviction and found him guilty of persons not to possess firearms. This, however, occurred on March 20, 2017. N.T., 3/20/17, at 115-16.

owned the firearm found on the property because "if you have one gun you must have others." *Id.*

A motion to sever "is addressed to the sound discretion of the trial court." *Commonwealth v. Melendez-Rodriguez*, 856 A.2d 1278, 1282 (Pa.Super. 2004) (*en banc*) (quoting *Commonwealth v. Jones*, 610 A.2d 931, 936 (Pa. 1992)). Pennsylvania Rule of Criminal Procedure 583 governs severance of offenses and provides that "[t]he court may order separate trials of offenses . . . if it appears that any party may be prejudiced by offenses . . . being tried together." Pa.R.Crim.P. 583. When addressing a motion to sever, courts must determine "[1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses." *Melendez-Rodriguez*, 856 A.2d at 128s (quoting *Commonwealth v. Collins*, 703 A.2d 418, 422 (Pa. 1997)) (alterations in original).

We conclude the trial court did not abuse its discretion in denying the motion to sever the firearm and drug charges from the homicide charge. The trial court found that the motion was meritless,[3] reasoning that the evidence

_____

[3] In its Pennsylvania Rule Of Appellate Procedure 1925(a) opinion, the trial court concluded that Kovatto waived his motion to sever by not including it in

of the drug-related offenses were admissible in the homicide trial because the evidence "sheds light on [Kovatto's] possible motive," and the drug and firearm-related evidence was admissible to demonstrate the natural development of the facts. Trial Ct. Op. at 9. The trial court noted the offenses were linked because one of the firearms located in Kovatto's residence and the firearm used in the homicide had been stolen at the same. *Id.* at 9. The trial court further found that the jury was able to separate the homicide charge from the firearm and drug charges, noting the Commonwealth presented evidence of each crime separately and the court issued separate instructions for each crime. *Id.* at 9-10. Further, the trial court found Kovatto did not suffer prejudice. *Id.* at 10. After review of the record, the parties' briefs, and the relevant law, we affirm on the basis of the well-reasoned opinion of the Honorable Jeffrey L. Finley, which we incorporate herein. *Id.* at 7-10.

Kovatto next claims the trial court erred in denying his motion for mistrial based on the presentation of evidence that Kovatto had exercised his Fifth Amendment right to remain silent. He maintains that the Commonwealth presented the testimony of Officer Matthew Mergen that Kovatto said he was "done" talking to establish that Kovatto had something to hide, "thereby influencing the jury to think he was hiding his role in the killing." Kovatto's Br. at 15. He argues that the trial court offered to issue a cautionary instruction,

_____

his omnibus pre-trial motion and addressed the merits. Trial Ct. Op. at 8. At the time of the hearing, the trial court stated it denied the motion on the merits. N.T., 3/13/17, at 6-7.

- 4 -

while noting it would bring the comment more attention, and instructed the Commonwealth to skip the portion of the video in which Kovatto stated he was "done." *Id.* Kovatto maintains the trial court's statements prove the court "had concern over the impact the statement would have on the jury." *Id.*

Because "[t]he trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury," we review a trial court's decision to grant or deny a motion for a mistrial for an abuse of discretion. *Commonwealth v. Rega*, 933 A.2d 997, 1016 (Pa. 2007) (quoting *Commonwealth v. Simpson*, 754 A.2d 1264, 1272 (Pa. 2000)). A trial court should grant a mistrial only where "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Id.* (quoting *Simpson*, 754 A.2d at 1272).[4]

The trial court denied the motion for a mistrial, noting that the "'mere revelation of a defendant's pre-arrest silence does not establish innate prejudice [where] it was not used in any fashion that was likely to burden defendant's Fifth Amendment right' or create an inference of guilt." Trial Ct. Op. at 13 (quoting *Commonwealth v. Adams*, 39 A.3d 310, 318 (Pa.Super. 2012)) (alteration in original). It reasoned that the Commonwealth offered the reference to Kovatto's silence "for the narrow purpose of describing the extent

---

[4] The Commonwealth argues the claim is waived. We, however, decline to find waiver. Kovatto made a motion for mistrial close in time to the challenged testimony and prior to the video, which would have repeated the testimony, and the trial court addressed the merits of the motion.

and focus of [the] investigation, rather than substantive evidence of guilt."
*Id.* at 14. It, therefore, concluded the reference did not violate Kovatto's Fifth
Amendment right. We agree and conclude the trial court did not abuse its
discretion in denying the motion for mistrial. After review of the record, the
parties' briefs, and the relevant law, we affirm on the basis of the well-
reasoned opinion of the Honorable Jeffrey L. Finley, which we incorporate
herein. *Id.* at 10-14.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/11/18

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA                     opTlONAL

                                                 :No. CP-09-CR-0000450-2016

                                    :
                                    :
                                    :
                                    :
NICHOLAS KOVATTO                    :

OPINION

Nicholas Kovatto ("Appellant") appeals to the Superior Court of Pennsylvania following his conviction on March 20, 2017 and sentencing on May 24, 2017. Pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), we file this Opinion in support of the Court's ruling.

1.   FACTUAL AND PROCEDURAL HISTORY

On November 1 3, 2015, at approximately 5:30 p.m., Appellant arrived at the residence of his friend, James Cressman. [1] N.T., 3/15/17, p. 130. Mr. Cressman resides at 160 Richlandtown Pike, Richland Township, Bucks County. Id. at 126. Mr. Cressman's property contains two single family residences and multiple sheds. N.T., 3/16/17, p. 121. One of these sheds is referred to as the "Tiki Bar." Id. at 11, 122. Located in front of the Tiki Bar is a parking area where several motor vehicles were parked on the evening of November 13, 2015. Id- at 123.

Approximately ten to fifteen minutes after Appellant arrived at Mr. Cressman's residence, Appellant and Mr. Cressman entered one of the sheds, where they talked, consumed beer, and smoked marijuana. N.T., 3/15/17, p. 131-32, 134. While still inside the shed, Appellant and Mr. Cressman heard a motor vehicle approaching the residence. Id. at 132. Mr.

_____

[1] Although Mr. Cressman resides at 160 Richlandtown Pike, the property is actually owned by Mr. Cressman's girlfriend. However, this Court will refer to the property as that of Mr. Cressman's for purposes of clarity and ease of reference.

1

Cressman looked out of the shed and noticed his friend, Eric Kramer, ("the victim") getting out of the vehicle. Id. at 134. Mr. Cressman yelled out to the victim that they were "out in the shed". Id. Defendant and the victim were acquaintances who were known to argue "a lot . .. about money". N.T., 3/17/17, p. 23. The last few times Defendant and the victim saw each other, Mr. Cressman noticed "nit-picking" between the two men. N.T., 3/15/1 7, p. 178.

As the victim was walking up the driveway towards the shed, Appellant exited the shed and collided with the victim. Id. at 134-35. -Mr. Cressman remained inside the shed where he heard a brief scuffle between the two men followed by three popping sounds. Id. at 135, 162. Mr. Cressman then looked out of the shed and observed the victim laying on the ground. Id. at 135. Appellant was standing over the victim. N.T., 3/15/17, p. 135. Mr. Cressman heard another "pop" and saw a flash of light. Id. Mr. Cressman fled to the edge of the property and continued running through the woods away from the property. Id, at 135-36.

Mr. Cressman called his girlfriend, Cristine Johnson, to tell her that "Nicky shot Eric" and that "Eric is dead". N.T., 3/16/17, pp. 7-8. Ms. Johnson urged Mr. Cressman to call 911 to report the shooting. Id. at 9. Mr. Cressman first called his friend, Charles Wrecsics, who lives down the street, to ask him to pick him up. N.T. 3/15/17, p. 140. Mr. Wrecsics picked Mr. Cressman up and drove towards Mr. Wrecsics's home. Id. Mr. Cressman then called 911 and "told them everything." Id. at 142.

Two 911 calls were received by Bucks County Emergency Communications on the evening of November 13, 2015. N.T. 3/15/17, p. 28. The first call was made by Carol Walch, a friend of Ms. Johnson, at 6:32 p.m. See Commonwealth's Exhibit C-10. Ms. Walch relayed to the dispatcher that a shooting occurred at 160 Richlandtown Pike and that the shooter was "Nick Kavoco" [sic]. See Commonwealth's Exhibit C-10. The second call was made by Mr. Cressman at 6:37 p.m. N.T., 3/15/17, p. 101.

2

Following the first 911 call, Officer John Burke and Officer Matthew Mergen of the Richland Township Police Department were dispatched to 160 Richlandtown Pike. Id. at 40. Upon arriving at the residence, the officers parked their respective vehicles at the end of the driveway. Id. at 46. The property was very dark with no street lights to illuminate the area. Id. Officer Mergen approached the property from the left and used a flashlight intermittently to illuminate the area. N.T. 3/15/17, p. 51. Upon approaching the residence, Officer Burke noticed movement inside the Tiki Bar. Id. at 112. Officer Burke identified himself as a police officer and instructed the person, later identified as Appellant, to exit the Tiki Bar. Id.

Officer Burke approached Appellant and engaged him in conversation in an attempt to find out what had occurred on the property earlier in the evening. Id. at 114. Officer Mergen made his way towards the Tiki Bar and joined Appellant and Officer Burke. N.T., 3/15/17, p. 52. Officer Burke patted Appellant down for officer safety and found no weapons. Id. at 98, 115. Officer Burke directed Appellant to sit down in a nearby chair. Id. at 52. Appellant remained seated and smoked a cigarette and drank a beer throughout the conversation. Id, at 55. Appellant expressed that he was not sure why the police were called to the property and stated to the officers that they "were not really needed here." N.T., 3/15/17, pp. 54, 114.

Officer Mergen informed Appellant he was being audio and video recorded on Officer Mergen's mobile video recorder. Id. at 54. At this point, Appellant became unwilling to cooperate verbally. Id. However, upon request by Officer Mergen, Appellant provided his driver's license as photo identification. Id. The driver's license displayed the name Nicholas Kovatto, the named shooter in the 911 call. N.T. 3/15/17, p. 54. Officer Mergen asked Appellant whether the address listed on his driver's license was an accurate address. Id.

3

Appellant told Officer Mergen that he was "done" talking to the officers. Id.

Officer Bryan Lockwood of the Quakertown Borough Police Department broadcasted via police radio that he was on the phone with Mr. Cressman, who stated that the victim's body was located near a shed and that Mr. Cressman observed the shooting. Id. at 55-56. Officer Mergen then informed Appellant that he was going to detain him and placed Appellant in handcuffs. N.T., 3/15/17, p. 56. Officer Burke continued to survey the property and located the victim less than one minute later laying between two vehicles outside the shed. Id. at 56. The victim was deceased. Id. at 117.

Appellant was taken into custody and transported to the Richland Township Police Department. Id. at 81. The clothing Appellant was wearing, including a hooded sweatshirt, dark-colored work pants, and a pair of boots was removed and placed into evidence bags. N.T., 3/17/17, p. 81. The right boot contained a dried blood stain. Id. at 151. The hooded sweatshirt and right boot were sent for DNA analysis, along with a buccal swab obtained from Appellant and a dried blood sample from the victim. Id. at 166. The blood on Appellant's right boot was determined to be that of the victim. Id. at 169.

Dr. Ian Hood, accepted as an expert witness in forensic pathology on behalf of the Commonwealth, conducted an autopsy of the victim and subsequently prepared an autopsy report. N.T. 3/16/17, pp. 35, 37. The victim sustained five gunshot wounds to the head. Id. at 41. Dr. Hood determined that all of the shots were taken within close range. Id. at 55. Specifically, Dr. Hood testified that the shooter was as close as "a few inches away" from the victim and as far as a foot away. Id. at 41, 55. The bullets recovered from the victim's head were .22-caliber gilding metal washed bullets. N.T. 3/16/17, p. 42. A sixth bullet was recovered from the collar of the victim's hooded jacket. Id. at 47.

On November 15, 2015, a search warrant was executed on Appellant's apartment. Id. at 169-70. The police officers found a .32-caliber Jennings semi-automatic pistol, which had been reported stolen in a residential burglary in Berks County in May of 2015, a .44-caliber Smith and Wesson revolver, which was reported stolen in the late 1980's, and various ammunition, including .22-caliber ammunition that matched the bullets recovered from the victim's head. Id. at 171, 178, 181, 183, 184. Also seized from Appellant's apaflment was approximately eight grams of methamphetamine, a tally sheet, a digital scale, glassine baggies typically used to package drugs, and $1750. Id.

OnNovember 18, 2015, a grid search was conducted at 160 Richlandtown Pike by the Philadelphia Fire and Rescue Team and the Temple University Police cadets. N.T., 3/16/17, p. 141. A Taurus .22-caliber revolver was recovered in the woods of the property buried under a brick paving stone. Id. at 143, 144. The ground surrounding the brick paving stone was wet and muddy from precipitation that had occurred on November 13, 2015. Id. at 99; N.T., 3/17/17, p. 174. However, the brick paving stone was not sunken into the ground, was completely dry, and had dry, crumbled dirt on top of it. N.T., 3/16/17, p. 99. The revolver contained seven empty shell casings and two live rounds. Id. at 147. The revolver was stolen from the same residence as the .32 caliber handgun found in Appellant's apartment. N.T. 3/16/17, p. 113.

Appellant was charged with criminal homicide? possession of methamphetamine with intent to deliver,[3] three counts of receiving stolen property,[4] three counts of possessing an instrument of crime,[5] and possession of firearm prohibited.[6]

On July 7, 2016, Appellant filed an omnibus pre-trial motion. On July 22, 2016, Appellant filed a motion to sever the possession of firearm prohibited charge from the remaining charges. On August 10, 2016, the Court heard numerous pre-trial motions filed by both parties.

Appellant's Motion to Sever was granted by agreement of the parties. On February 23, 2017, Appellant filed a second motion to sever, requesting severance of the drug and gun-related charges from the homicide charge. On March 13, 2017, the Court denied Appellant's second motion to sever.

A five-day jury trial commenced on March 13, 2017. On March 20, 2017, Appellant was found guilty of all counts. Immediately following the return of the verdict, Appellant waived his right to a jury trial on the severed charge of possession of firearm prohibited. The Court incotporated the testimony from the jury trial and received into evidence a certified copy of conviction, detailing Appellant's criminal history. N.T., 3/16/17, p. 115. Appellant was subsequently found guilty of the severed charge of possession of firearm prohibited. Id. at 11516. Sentencing was deferred pending completion of a pre-sentence investigation.

_____

[2] 18 Pa.C.S.A. § 2501(a).

[3] 35 Pa.C.S.A. §780-113(

[4] 18 Pa.C.S.A. § 3925(a). ə.
18 Pa.C.S.A. § 39250.

[6] 18 Pa.C.S.A. § 6105(a)(1

On May 24, 2017, Appellant was sentenced to life imprisonment plus an aggregate term of fifteen (15) to thirty (30) years incarceration. On June 23, 2017, Appellant filed a notice of appeal. On June 26, 2017, this Court entered an order directing Appellant file a concise statement of errors complained of on appeal within twenty-one days.

11.     STATEMENT OF ERRORS COMPLAINED OF ON APPEAL

On July 12, 2017, in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), Appellant filed his Statement of Errors Complained of on Appeal, set forth verbatim herein:

1. Whether the trial court erred in denying the Appellant's motion for severance of the gun and drug charge from the homicide charges filed against him?

2. Whether the trial court erred in denying the Appellant's motion for a mistrial when the District Attorney played a video for the judge in which the Appellant exercised his Fifth Amendment right to remain silent?

111. DISCUSSION

First, Appellant contends that the Court erred by denying the motion to sever the gun and drug-related charges from the homicide charge. The decision whether to grant severance rests within the sound discretion of the court and will not be disturbed absent a manifest abuse of discretion. See Commonwealth v. Grillo 917 A.2d 343 (Pa. Super. Ct. 2007). Pennsylvania Rule of Criminal Procedure 583 provides that a court may order separate trials of offenses if it appears that any party may be prejudiced by offenses being tried together. Pa.R.Crim.P. 583. A request for severance must generally be made in the omnibus pretrial motion or it is considered waived unless a later filing is permitted pursuant to Pennsylvania Rule of Criminal Procedure 579. see Pa.R.Crim.P. 578; Pa.R.Crim.P. 579.

Where the defendant moves to sever offenses, the court must consider: (l) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid the danger of confusion; and (3) whether the defendant will be unduly prejudiced. See Commonwealth v. Lark, 543 A.2d 491 (Pa. 1988).

Appellant's request to sever the drug and gun-related charges from the homicide charge was raised for the first time in his February 22, 2017 Motion to Sever. This filing came nearly eight months after the filing of his omnibus pre•trial motion. Accordingly, in denying Appellant's Motion to Sever, the Court first found that the request for severance was waived due to Appellant's failure to include it in his omnibus pre-trial motion, as required by Pennsylvania Rule of Criminal Procedure 578. Nonetheless, the Court proceeded to analyze the Motion pursuant to the three-prong test applicable to requests for severance set out by the Pennsylvania Supreme Court.

First, the evidence of each of the offenses would have been admissible in a separate trial for the others. It is well-settled that evidence of other crimes is not admissible against a defendant solely to show his bad character and his propensity for committing criminal acts. Commonwealth v. Banks 521 A.2d 1 (Pa. 1987). However, evidence of other crimes may be admissible under particular circumstances "where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him to be a person of bad character." Commonwealth v. Buchanan, 689 A.2d 930, 932 (Pa. Super. Ct. 1997) (citing Commonwealth v. Clanool, 495 A.2d 176 (Pa. 1985).

Specifically, evidence of other crimes is admissible to demonstrate (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design; or (5) the identity of the person charged with the commission of the crime on trial. Lark, 543 A.2d at 497. Additionally, evidence of other crimes may be admissible where the evidence is part of the history of the case and foxms part of the natural development of the facts. See id..

Here, the evidence of the drug-related offenses sheds light on Appellant's apparent motive in murdering the victim. On the evening of the murder, Mr. Cressman informed Officer Lockwood that Appellant and the victim frequently argued about money—presumably because

8

the victim owed Appellant money. Defense counsel even acknowledged that an argument exists that the drugs found in Appellant's apartment were the reason for the murder, although defense counsel ultimately contended that there is no factual support for such a theory. See N.T., 3/16/17, p. 115

Additionally, the drug and gun-related offenses were admissible to demonstrate the natural development of the facts. The discovery of the drugs and stolen guns was a natural consequence of the search executed following Appellant's arrest for murder. The offenses therefore occurred as part of the same event.

Furthermore, the offenses were also linked because the .32-caliber handgun found in Appellant's apartment after the murder was committed was stolen from the same residence at the same time as the murder weapon found buried on the property where the victim was murdered. As the Pennsylvania Supreme Court stated in Lark, Appellant "forged his linkage of events and he deserves to be tried jointly on them." Lark 543 A.2d 491 at 500 (quoting the trial court opinion).

Second, the jury was capable of separating the homicide from the gun and drug-related crimes. Although the circumstances surrounding the offenses formed a logical chain of events as discussed above, the crimes involved distinguishable acts. The homicide involved the shooting death of the victim whereas the remaining offenses involved Appellant's possession of guns and thugs in his apartment. The Commonwealth presented evidence of each crime separately and called witnesses in a logical order that demonstrated that the homicide was committed and then the guns and drugs were subsequently found by police officers executing a search wanant on Appellant's apartment. Further, the crimes themselves require different elements be proven and

9

which clearly require independent evaluation by the jury. The Court's clear instructions to the jury regarding the different offenses further diminished any danger of confusion.

Finally, Appellant did not suffer undue prejudice. "Prejudice" is not prejudice in the sense that the defendant will be linked to crimes for which the defendant is being prosecuted, but rather it is prejudice that would occur if evidence tended to convict the defendant only by showing his or her propensity to commit crimes or because of a jury's inability to separate evidence or to avoid cumulating evidence. Commonwealth v. Collins, 703 A.2d 418 (Pa. 1997). There is clearly no such undue prejudice present in this case. The jury heard evidence of distinct, although interrelated, crimes that required different elements be proved and heard testimony from different witnesses as to each crime.

Next, Appellant challenges the Court's denial of his Motion for Mistrial following the admission of testimony from Officer Matthew Mergen of the Richland Township Police Department mentioning Appellant's pre-arrest refusal to speak with Officer Mergen and Officer John Burke. Appellant argues that Officer Mergen's testimony[1] violated Appellant's right to remain silent pursuant to the Fifth Amendment to the Constitution of the United States.

Appellant challenges the following testimony:

Deputy District Attorney:    Can you just please describe to the members of the jury what happened as you approached [Appellant] and Officer Burke?

Officer Mergen: Officer Burke was trying to glean what infomation might come from Mr. Kovatto. He acted as though he didn't know why we were there; he didn't know why we were

---

[1] Although Appellant's second error complained of on appeal contends that the basis for Appellant's motion for mistrial derived from a video recording in which Appellant invoked his right to remain silent, a review of the transcript demonstrates that the motion for mistrial arose following Officer Mergen 's testimony on direct examination wherein he mentioned that Appellant did not wish to speak to the officers. Thus, the Court will discuss Appellant's argument as it relates to Officer Mergen's testimony rather than the portion of the video recording in which Appellant states that he is "done talking" to the officers because that portion was not even played in the jury's presence.

called there. He talked to us for a short time until I advised him that I was audio and video recording on my camera. At that point he became unwilling to cooperate verbally. I was trying to inquire as to what his current address was. And he had provided me his operator's license, his PA's operator's license. I was trying to question him as to whether that was the accurate address or not and he pretty much said, I'm done talking to you. Those were some of the responses that he had given to Officer Burke as well. Just trying to find out what was going on. N.T. 3/15/17, pp. 54-55.

Defense counsel did not object to the foregoing testimony. Direct examination proceeded for a fewmore minutes until the Commonwealth requested to play the video recording. Id. at 57-38.

At that point, defense counsel did not object to the recording, but requested to approach the bench. Id. at 58.

Defense counsel made an oral motion for mistrial, arguing that Officer Mergen's testimony that Appellant stated that he was "done" talking to the officers amounted to commentary on Appellant's assertion of his Fifth Amendment right to remain silent. Id. at 58-59 The Court denied the Motion, but asked whether defense counsel wished for the Court to give a cautionary instruction to the jury. N.T., 3/15/17, p. 59. Defense counsel responded affirmatively. Id. The Court asked for defense counsel's input as to the substance of the cautionary instruction, expressing the Court's concern that the insttuction may serve to further emphasize the statement. Id. Defense counsel ultimately withdrew the request for a cautionary instruction. Id. at 60.

Immediately following this discussion at sidebar, the Commonwealth requested the video recording of Officer Mergen's conversation with Appellant, recorded by Officer Mergen's mobile video recorder, be played for the jury. N.T., 3/15/17, pp. 57-58. Defense counsel objected and a second discussion regarding Appellant's statement was conducted at sidebar. rd.

at 61. The Court permitted the Commonwealth play the video. "Id. Although the Court did not find that Appellant's statement rose to the level of asserting his right to remain silent, the Court instructed the Commonwealth skip over the statement at issue in the video. Id..

Pennsylvania Rule of Criminal Procedure 605 governs mistrials and permits a defendant move for a mistrial when "an event prejudicial to the defendant occurs during trial". Pa.R.Crim.P. 605(B). Whether to grant the "extreme remedy of a misfrial" is a matter within the discretion of the trial court. Commonwealth v. Boczkowski, 846 A.2d 75, 94-95 (Pa. 2004). "A trial court need only grant a mistrial where the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial." Commonwealth v. Jones, 668 A.2d 491, 502-04 (Pa. 1995), cert. denied, 519 U.S. 826 (1996).

Both the Fifth Amendment to the United States Constitution and Article l, Section 9 of the Pennsylvania Constitution protect an individual's right not to be compelled to be a witness against himself. See U.S. Const. amend. V; Pa. Const. artl I, § 9. This privilege protects an individual from being compelled to speak before arrest. Commonwealth v. Molina 33 A.3d 51, 57 (Pa. Super. Ct. 2011). Further, the Commonwealth is prohibited from using a "non-testifying defendant's pre-arrest silence to support its contention that the defendant is guilty of the crime charged as such use infringes on a defendant's right to be free from self-incrimination." Id. at 62. Nonetheless, this rule does not prohibit any mention of a defendant's silence, but rather, "guards against the exploitation" of a defendant's right to remain silent. Commonwealth v. Adams 39 A.3d 310, 318 (Pa. Super. Ct. 2012). Accordingly, the "mere revelation of a defendant's pre-arrest silence does not establish innate prejudice [where] it was not used in any fashion that was likely to burden defendant's Fifth Amendment right" or create an inference of guilt. Id. (quoting MQJju, 33 A.3d at 56).

In Molina, the Pennsylvania Superior Court found that the defendant's right to remain silent was not violated where the detective who investigated the defendant's potential involvement in the disappearance of another person testified that the defendant had refused to meet the detective at police headquarters to discuss the matter. Molina, 33 A.3d at 54, 56. The Court reasoned that defendant's right to remain silent was not violated because this "testimony was originally offered to denote the extent and focus ofthe police investigation". Id. at 56. Further, the reference to the defendant's silence was not "used in any fashion that was likely to burden [the defendant's] Fifth Amendment right or to create an inference of an admission of guilt." Id.

Similarly, in Commonwealth v. Guess, 53 A.3d 895 (Pa. Super. Ct. 2012), a detective's reference during direct examination to the defendant's pre-arrest silence did not violate the defendant's right to remain silent because his silence was not offered as substantive evidence of guilt. Guess 53 A.3d at 905. In Guess the detective was dispatched to the report of a burglary in progress. Id. at 898. Upon his arrival, he encountered two males in the parking lot that fit the description of the suspects that had been provided to him, Id. The detective identified himself and inquired whether the two men lived on the premises. Id. The two men responded that they did not live there, but were visiting a friend. Guess 53 A.3d at 898. Then asked to provide the name of the friend, the two men did not respond. Id. At trial, the detective referenced this prearrest silence during direct examination. Id.

Here, similar to Molina and Guess, Officer Mergen's reference to Appellant's silence was offered for the narrow purpose of describing the extent and focus of his investigation, rather than as substantive evidence of guilt. Officer Mergen's reference to Appellant's silence was limited to

13

describing he and Officer Burke's encounter with Appellant and the steps he took in conducting his investigation. Thus, this reference did not violate Appellant's right to remain silent. Additionally, because the mere revelation of pre-arrest silence does not establish innate prejudice, this Court did not abuse its discretion in finding that Appellant did not suffer such prejudice that would deprive him of a fair and impartial trial. Accordingly, the Court properly denied Appellant's Motion for Mistrial.

## IV. CONCLUSION

For the foregoing reasons, this Court perceives that the issues of which Appellant has complained in this appeal are without merit.

BY THE COURT:

_____

JEFFREY L. FINLEY, P.J.

DATE: September 2112011

14

COMMONWEALTH VS. NICHOLAS KOVATTO
No. CP-09-CR-0000450-2016


Copies Sent To:

Monica Furber, Esquire
District Attorney's Office
100 North Main Street
Doylestown, PA 18901
     Attorneyfor the Commonwealth

Joseph Haag, Esquire
Public Defender's Office
100 North Main Street
Doylestown, PA 18901
     AND
Nathan Criste, Esquire
Public Defender's Office
100 North Main Street
Doylestown, PA 18901
     Attorneyfor the Defendant