J-S51015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AISHA PERRY, | : | |
| | : | |
| Appellant | : | No. 3225 EDA 2017 |

Appeal from the PCRA Order September 11, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005147-2013

BEFORE: DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 26, 2019**

Appellant, Aisha Perry, appeals from the Order entered September 11, 2017, denying her Petition for collateral relief filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

In May 2014, a jury convicted Appellant, a former Lieutenant in the Philadelphia Police Department, of two counts of Risking Catastrophe, four counts of Theft of Services, and one count of Conspiracy.[1] Evidence adduced at her trial established that Appellant had illegally tampered with meters monitoring her use of public utilities. *See Commonwealth v. Perry*, No. 2469 EDA 2014, unpublished memorandum at 1-2 (Pa. Super. filed Feb. 12, 2016). The trial court sentenced Appellant to incarceration for six to twenty-

_____

[1] 18 Pa.C.S. §§ 3302(b), 3926(a)(1), 903(c), respectively.

three months, followed by five years of probation. *Id.* at 2. On appeal, this Court affirmed her Judgment of Sentence. *Id.* at 3.

In January 2017, Appellant timely filed a Petition seeking collateral relief based on numerous allegations that her trial counsel was ineffective. *See* Appellant's Petition, 1/24/17, at 2-4 (unpaginated). In response, the Commonwealth filed a Motion to Dismiss. Thereafter, following proper notice, the PCRA court granted the Commonwealth's Motion, thus denying Appellant relief. *See* PCRA Court Order, 9/11/17. Appellant timely appealed.

Appellant raises the following issues on appeal:

1. Was [A]ppellant denied the effective assistance of counsel and a fair trial when trial counsel failed to object to evidence of (A) silence as proof of guilt; (B) improper police opinion testimony of guilt; and (C) evidence of wealth as proof of guilt, which counsel himself then elicited?

2. Was [A]ppellant denied effective assistance of counsel and a fair trial when trial counsel failed to challenge the unconstitutional jury instructions regarding how the jury was to consider the evidence as to each codefendant and how mere access to a tampered utility meter could establish an inference of guilt?

3. Was [A]ppellant denied the effective assistance of counsel and a fair trial when counsel trial counsel [sic] failed to object to improper prosecution closing argument, including expressions of personal belief and one comment/argument that shifted the burden of proof to the defense?

4. Is [A]ppellant entitled to relief under a "cumulative prejudice" standard?

Appellant's Br. at 6.

We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super. 2016) (citing *Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014)).

Appellant contends that trial counsel was ineffective. We presume counsel is effective. *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009). To overcome this presumption, a petitioner must establish that: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). A claim will be denied if the petitioner fails to meet any one of these prongs. *See Jarosz*, 152 A.3d at 350 (citing *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009)). In particular, it is well settled that "[c]ounsel cannot be deemed ineffective for failing to pursue a meritless claim." *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

In this case, the court dismissed Appellant's Petition without a hearing. The court has discretion to dismiss a petition without a hearing when it is satisfied "that there are no genuine issues concerning any material fact and

that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings."  Pa.R.Crim.P. 907(1); *see also Commonwealth v. Springer*, 961 A.2d 1262, 1264 (Pa. Super. 2008).

### Evidentiary Claims

In her first issue, Appellant raises several evidentiary claims in support of her contention that trial counsel was ineffective.  *See* Appellant's Br. at 18-25.   According to Appellant, the following evidence was inadmissible: (1) Appellant's silence during the internal affairs division's investigation of her; (2) police opinion testimony suggesting her likely guilt; and (3) reference to her apparent wealth.  *Id.* at 18.  Appellant asserts that trial counsel should have objected to this evidence.  *Id.* at 18-19.  Counsel's failure to do so, Appellant concludes, deprived her of a fair trial.  *Id.* at 19.  These claims are without merit.

#### *Appellant's silence*

Appellant contends that evidence of her silence during the investigation of her crimes was inadmissible.  *See* Appellant's Br. at 19-22.

The Commonwealth may not introduce a defendant's silence as substantive evidence of guilt.  *Griffin v. California*, 380 U.S. 609, 615 (1965).  This prohibition extends to both post-arrest and pre-arrest silence. *Commonwealth v. Molina*, 104 A.3d 430, 451 (Pa. 2014).

However, "[e]ven an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the

equivalent of a tacit admission of guilt." ***Commonwealth v. Whitney***, 708

A.2d 471, 478 (Pa. 1998); ***see also, e.g.***, ***Commonwealth v. Adams***, 104

A.3d 511, 518 (Pa. 2014) (OAJC) (concluding that reference to defendant's

silence did not unconstitutionally burden right against self-incrimination where

reference "was contextual and brief" and "simply utilized to recount the

sequence of the investigation"); ***Commonwealth v. Guess***, 53 A.3d 895,

905 (Pa. Super. 2012) (rejecting ineffectiveness claim where the

Commonwealth introduced testimony by police detective referencing

defendant's silence "for the narrow purpose of describing the extent and focus

of his investigation, not as substantive evidence of guilt").

The evidence challenged by Appellant consists of several references to

Appellant's status within the police department and the sequence of events

leading to her termination. Most notably, in response to questioning by the

Commonwealth regarding the administrative process typical of an internal

affairs investigation, Sergeant Richard Stein testified as follows:

> A. We serve them—it's called a NIATECH paperwork, criminal NIATECH paperwork. It lets them know they're being dismissed from the police department and why. The have a chance to respond.
>
> Q. And the other part I would ask you, when they get arrested, are they immediately dismissed? Is there a time period?
>
> A. The police commissioner gives them 30 days, 30 days with intent, which means you are basically beginning your 30 days. He is going to dismiss you within 30-day period. At the end of that 30-day period, you are officially dismissed from the police department. Up to then, you still work in the police department.

Q.   Did [Appellant] do anything in that 30-day period before she was released by the commissioner?

A    She resigned.

Notes of Testimony (N.T.), 4/24/14, at 200.   Subsequently, on cross-examination, Sgt. Stein testified that Appellant did not respond to her NIATECH paperwork. *Id.* at 230 ("Well, sir, when she was NIATECH, she had an opportunity to respond.  She chose not to.").  Sgt. Stein also suggested that, at least at this late stage of the investigation, he was no longer permitted to speak with Appellant. *Id.* ("[Q.] Did you try to speak to her?  A. We're not permitted to, sir.").

This testimony describes part of the administrative process utilized by the police department during an internal affairs investigation.  Appellant's decision not to challenge administrative notice of her pending termination was not substantive evidence of her guilt.  Thus, we reject Appellant's characterization of this evidence as violative of her right against self-incrimination and discern no merit in Appellant's assertion that trial counsel should have objected to its admissibility.[2]  *See Adams*, 104 A.3d at 518; *Guess*, 53 A.3d at 905.

Appellant also quotes the following testimony from Sgt. Stein on redirect as evidence of her silence that was inadmissible:

---

[2] As we find no merit in her challenge to the admissibility of this evidence, we need not address Appellant's further suggestion that trial counsel exacerbated the prejudice to her by returning to the subject of her NIATECH paperwork on cross-examination.  *See* Appellant's Br. at 21-22.

Q.     And although you are not allowed to speak to her, nobody came to you?

A.     That's correct.

Q.     And everybody was aware that you were the assigned investigator?

A.     That's correct.

**See** Appellant's Br. at 20 (quoting N.T., 4/24/14, at 233). The import of this testimony is unclear, even read in its original context. **See generally** N.T., 4/24/14. Certainly, this testimony reinforces Sgt. Stein's earlier suggestion that he was not permitted to speak with Appellant. However, the Commonwealth's reference to "nobody" and "everybody" did not imply any particular conduct by Appellant and certainly did not suggest to the jury a tacit admission of guilt. **See Whitney**, 708 A.2d at 478. Thus, this evidence provides no support for her claim.

*Police opinion testimony*

Appellant also contends that the Commonwealth adduced improper opinion testimony regarding her credibility. **See** Appellant's Br. at 22-24.

"The determination of the credibility of a witness is within the exclusive province of the jury." **Commonwealth v. Crawford**, 718 A.2d 768, 772 (Pa. 1998). Thus, expert testimony addressing the credibility of a witness is inadmissible. **See id.**; **Commonwealth v. Seese**, 517 A.2d 920, 922 (Pa. 1986). Recently, this Court extended this principle to the testimony of a police officer. **Commonwealth v. McClure**, 144 A.3d 970, 977 (Pa. Super. 2016)

(suggesting a jury could find "an unwarranted appearance of authority" in credibility).

Appellant again challenges testimony from Sgt. Stein. According to Appellant, Sgt. Stein should not have been permitted to testify that, based on his initial interviews with representatives from Philadelphia Gas Works (PGW), further investigation was required. *See* Appellant's Br. at 22-23; N.T., 4/24/14, at 184. In addition, Appellant asserts the jury should not have learned that, following execution of search warrants on Appellant's properties, the police department confiscated Appellant's service weapon and reassigned her to administrative duty. *See* Appellant's Br. at 22-23; N.T., 4/24/14, at 198-99. According to Appellant, this evidence was inadmissible because it implied the police department believed the charges against Appellant were credible. Appellant's Br. at 23.

This testimony merely recounted the sequence of events leading to Appellant's eventual arrest and prosecution. Sgt. Stein detailed the investigative actions he undertook and described certain administrative procedures in place. There was no express statement defaming Appellant's credibility, nor did the substance of Sgt. Stein's testimony implicitly encroach on the province of the jury as factfinder. *Cf. McClure*, 144 A.3d at 977 (concluding that the trial court erred in admitting police officer's express opinion regarding defendant's credibility and that such testimony was prejudicial). Thus, there was no basis for Appellant's trial counsel to object.

*Apparent wealth*

- 8 -

In her final evidentiary claim, Appellant contends that evidence of her "apparent wealth" implied unlawful conduct and was, therefore, inadmissible. Appellant's Br. at 24-25. In particular, Appellant challenges the admissibility of evidence demonstrating that she owned several vehicles, including a Mercedes Benz. *Id.* (citing N.T., 4/24/14, at 52-53 (referencing picture of Appellant's Mercedes taken at her residence), 217-19 (discussing cars registered to Appellant and her Co-Defendant)).

Essentially, Appellant challenges the relevance of this evidence, as well as its potential to prejudice her defense.[3] Evidence is relevant if it tends to make a fact of consequence more or less probable. *See* Pa.R.E. 401. Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by law." Pa.R.E. 402. "The court may exclude relevant evidence if its probative value is outweighed by" its potential for "unfair prejudice," *i.e.*, "a tendency to suggest decision on an improper basis." Pa.R.E. 403.

Here, Appellant's trial counsel mitigated any potential prejudice during his cross-examination of a PGW investigator, Timothy Sullivan:

Q. You took a picture of the Mercedes Benz?

---

[3] Appellant cites no Pennsylvania Rules of Evidence or precedent in support of her contention that evidence of apparent wealth is irrelevant absent "some nexus" between a defendant's wealth and the charges against that defendant. *See* Appellant's Br. at 24-25 (quoting *State v. Sonthikoummane*, 769 A.2d 330, 336 (N.H. 2000)). In other contexts, Pennsylvania courts have similarly recognized that the Commonwealth must establish a nexus between wealth and criminal conduct. *See, e.g.*, *Commonwealth v. $6,425.00 Seized from Esquilin*, 880 A.2d 523, 529 (Pa. 2005) (applying standard in forfeiture case).

A.    That's correct.

Q.    You thought that was important?

A.    Yes.

Q.    Is it a crime to have a—hopefully it's not a crime to have a Mercedes because I'm guilty but is there a crime to have a Mercedes-Benz?

A.    No.

Q.    Did the Mercedes again have anything to do with the possible bypassing of gas?

A.    No.

N.T. at 52-53. Moreover, the trial court considered both the relevance and, implicitly, the potential prejudicial impact of any reference to vehicles owned by Appellant:

The Court: [Prosecutor], were these vehicles involved in any kind of crime here?

[Prosecutor]: No[,] Your Honor. The address of where they are registered is relevant to where the defendants are claiming residency.

The Court: Okay. We can't get an agreement as to where they live?

[Co-Defendant's Counsel]: Sure, I can tell you exactly where the [co-]defendant lives.

[Appellant's Counsel]: As [can] I, Judge.

[Prosecutor]: Your Honor, I mean—

The Court: You would rather do it this way?

[Prosecutor]: No, it's not about rather. I've been put to task. It was my burden of proving it. They can get up there and say they live on the moon. I have to prove they are actually the properties in which the utilities are being tampered at, so that's where I'm at with this, just trying to move my case.

The Court:  I am saying—

[Prosecutor]:  I can maybe do that by stipulation tomorrow morning.

[Co-Defendant's Counsel]:  Sure.

[Prosecutor]:  And we'll move forward and that will be perfect.

The Court:  We appreciate the job that you are doing in managing all this paper but I understand.

N.T., 4/24/14, at 218-19.

Appellant stood accused of Theft of Services and related charges stemming from her alleged tampering with utility meters.  Clearly, the addresses at which her vehicles were registered was evidence relevant to establish Appellant's place of residence, a fact of consequence in light of the charges against her.  *See* Pa.R.E. 401.  Further, trial counsel mitigated any prejudicial impact of this evidence.  Based on this record, we discern no valid basis for Appellant's trial counsel to object to its admissibility.

## Jury Instructions

In her second issue, Appellant raises two claims challenging jury instructions.  *See* Appellant's Br. at 25-29.  According to Appellant, the court failed to instruct properly the jury regarding (1) Appellant's potential guilt, relative to that of her Co-Defendant and (2) an inference of guilt based on proximity to a tampered meter.  *Id.* at 25.  As with her evidentiary claims, Appellant asserts that trial counsel's failure to object to these instructions deprived her of a fair trial.  *See id.* at 25-26, 27, 29.  These claims are devoid of merit.

- 11 -

The trial court has broad discretion in crafting its instructions to the jury. *Commonwealth v. Ragan*, 743 A.2d 390, 397 (Pa. 1999). We must consider "the entire charge to determine whether the trial court clearly and accurately presented the concepts of the legal issue to the jury[.]" *Id.*

*Individual consideration of Appellant's charges*

Initially, Appellant does not challenge any substantive instruction given by the court. Rather, Appellant suggests that certain remarks by the court "prevented [her] from being acquitted even if the jury entertained a reasonable doubt as to her guilt[.]" Appellant's Br. at 26. She relies on the following to support this contention:

> Good morning, members of the jury. You have now heard all of the evidence and arguments of counsel in this case.
>
> The [co-]defendant … is charged with various counts of theft of services at various addresses. He is also charged with conspiracy to engage in theft of services at [Appellant's residence] and [his and Appellant's business address], and also charged with risking a catastrophe at [several addresses].
>
> [Appellant] … is charged with theft of services at various locations as well as conspiracy to engage in theft of services at [her residence and business address] and risking a catastrophe at [those addresses].
>
> You have three alternatives. You may find **each** defendant not guilty on all charges or you may find **each** defendant guilty on all charges or you may find **each** defendant not guilty on some and guilty on other charges.

N.T., 4/29/14, at 6-7 (emphasis added) (thereafter defining the relevant law).

According to Appellant, "[e]ven a cursory examination of this language shows what is missing—the option that 'you may find one defendant not guilty

of *all* charges and find the other defendant guilty of some or all charges.'" Appellant's Br. at 26 (emphasis in original). These remarks, Appellant suggests, undermined her right "to individual consideration of the charges she face[d]." Appellant's Br. at 26.

We need not parse the trial court's language to reject categorically Appellant's argument. In rather clear and commonsensical terms, the court summarized the charges against Appellant and her Co-Defendant and outlined the possible verdicts the jury could reach. As to **each** defendant, the options summarized were correct.[4] We discern no error here and, thus, no grounds for counsel to object. ***See Ragan***, 743 A.2d at 397.

*An inference of guilt*

Appellant also suggests the court improperly instructed the jury that it could infer guilt "based solely on access to a tampered meter." Appellant's Br. at 27.

Appellant challenges the following jury instruction:

Under the law, you may draw a reasonable inference that a defendant attempted to avoid payment if you find that the defendant had possession of or access to a public utility meter or service measuring device that had been tampered with or somehow avoided so as to inhibit or prevent it from accurately

---

[4] We construe words "according to their common and approved usage." 1 Pa.C.S. § 1903(a). The word "each," used as an adjective, means "every one of two or more considered individually or one by one." DICTIONARY.COM, https://www.dictionary.com/browse/each (last visited Jan. 28, 2019). In comparison, the word "both" means "one and the other; two together." DICTIONARY.COM, https://www.dictionary.com/browse/both (last visited Jan. 28, 2019).

measuring the utility service that the defendant enjoyed the use of or received the benefits from that utility service.

If you find this type of tampering or avoidance to be present in this case, it may be inferred that the defendant acted to avoid— or acted to avoid or tamper with the meter or measuring device and that such defendant did so with intent to obtain the service without paying for it fully.

N.T., 4/29/14, at 10. According to Appellant, the Commonwealth could establish her guilt "without requiring a single additional fact." Appellant's Br. at 28.

Appellant does not portray accurately the court's instruction for the charge of Theft of Services. **Preceding** the language set forth above, the court defined four necessary elements to this crime, requiring the jury to find beyond a reasonable doubt that the defendant: (1) obtained utility services; (2) obtained those services intentionally; (3) knew the services were available only for compensation; and (4) avoided payment for those services by deception or other means. *See id.* at 8-10. These elements are defined by statute. *See* 18 Pa.C.S. § 3926(a).

Moreover, the court's reference to "a reasonable inference" is similarly defined by statute:

(d) Inferences.--

(1) Any person having possession of or access to the location of a public utility meter or service measuring device which has been avoided or tampered with so as to inhibit or prevent the accurate measurement of utility service and who enjoys the use of or receives the benefit from the public utility service intended to be metered or measured by the public utility meter or measuring device so avoided or tampered with may be reasonably inferred to have acted to

- 14 -

avoid or tamper with the public utility meter or measuring device with the intent to obtain the public utility service without making full compensation therefor.

18 Pa.C.S. § 3926(d).[5]

Finally, as noted by the Commonwealth, the court's instruction mirrors that provided in the Pennsylvania Suggested Standard Jury Instructions. **See** Commonwealth's Br. at 31-32 (quoting Pa.S.S.J.I. (Crim) 15.3926A). It is presumed that such instructions accurately reflect the law. **See Commonwealth v. Kerrigan**, 920 A.2d 190, 198 (Pa. Super. 2007).

As the court's instruction to the jury accurately reflects the relevant legal concepts, we discern no error. **See Ragan**, 743 A.2d at 397. Thus, trial counsel had no valid basis to object.

## Commonwealth's Closing Argument

In her third issue, Appellant contends that the Prosecutor for the Commonwealth made inappropriate remarks during closing argument, expressing her personal beliefs and attempting to shift the burden of proof. **See** Appellant's Br. at 29-31. Counsel's failure to object to these remarks, according to Appellant, deprived her of a fair trial. **Id.** Appellant's claim is without merit.

It is well settled that "the prosecutor may not express to the jury a personal belief as to the guilt or innocence of the accused." **Commonwealth**

_____

[5] We also reject Appellant's suggestion that this inference permits a finding of guilt by "mere presence." **See** Appellant's Br. at 28. Rather, the inference is relevant to determining whether a defendant possessed the requisite criminal intent.

*v. Sweeper*, 450 A.2d 1368, 1372 (Pa. Super. 1982) (quoting

*Commonwealth v. Maloney*, 365 A.2d 1237, 1242 (Pa. 1976)); *see also*

*Commonwealth v. Ronello*, 96 A. 826, 829 (Pa. 1916). However, "[e]ven

an otherwise improper comment may be appropriate if it is in fair response to

defense counsel's remarks." *Commonwealth v. Sanchez*, 82 A.3d 943, 981

(Pa. 2013) (citing *Commonwealth v. Spotz*, 47 A.3d 63, 97 (Pa. 2012)). In

addressing claims of prosecutorial misconduct, the question is "whether the

defendant was deprived of a fair trial, not deprived of a perfect trial."

*Commonwealth v. LaCava*, 666 A.2d 221, 231 (Pa. 1995) (further

recognizing that "this is a relatively stringent standard").

A prosecutor is afforded latitude to argue "legitimate inferences" based

on the evidence and to present arguments "with logical force and vigor."

*Commonwealth v. Rollins*, 738 A.2d 435, 445 (Pa. 1999). Thus, "not every

unwise, intemperate, or improper remark made by a prosecutor mandates the

grant of a new trial." *Sanchez*, 82 A.3d at 981 (citing *Commonwealth v.

Cox*, 983 A.2d 666, 687 (Pa. 2009)). Inappropriate comments by a

prosecutor are not actionable unless "the unavoidable effect … would be to

prejudice the jury, forming in their minds fixed bias and hostility toward the

defendant so that they could not weigh the evidence objectively and render a

true verdict." *LaCava*, 666 A.2d at 231.

Here, Appellant cites two examples from closing argument in which the

Prosecutor employed the first person, thus suggesting that the Prosecutor

issued a direct statement of opinion. In the first, it is clear from the context

that the Prosecutor sought to contrast the Commonwealth's position from that

of Appellant and her Co-Defendant:

> The evidence presented in this trial only leaves you … two choices, either they did it or they didn't. And somehow these defendants and their attorneys want you to believe that [they] are poor people who got their lives turned upside down for no reason, that they did nothing wrong because no one saw them with a wrench in their hand[s].

> And what we want you to believe and what the evidence proved beyond any doubt and what you saw with your own two eyes is that they did it, that they directed it, that they benefitted … They want you to believe a fairy tale[,] and I'm asking you to come back to reality.

N.T., 4/28/14, at 192-94.

In the second example cited by Appellant, the Prosecutor challenged the

credibility of a potential defense to the documentary evidence adduced by the

Commonwealth:

> So the utility fairy goes from place to place, from utility, gas utility, electric utility, water, and it just so happens that that fairy went around … mystically rigging all their utilities, all their places to their benefit and in some places the benefit was close to 80 percent reduction in their gas bills.

> In between 2007 and 2012, the [annual] gas bills at [Appellant's residence] were close to $2500. I don't care what kind of high efficiency appliances you're buying. You don't get to reduce your bill for the entire time [to] $500 in a year[.]

*Id.* at 194.

Appellant cites our decision in *Sweeper* in support of her assertion that

these arguments impermissibly expressed the personal opinion of the

Prosecutor and were, thus, prejudicial. Appellant's Br. at 30. While we agree

- 17 -

that the Prosecutor's choice of words arguably runs afoul the settled prohibition against statements of personal belief, Appellant's reliance on **Sweeper** is not persuasive.  Key to our finding of prejudice in **Sweeper** was the manner in which the prosecutor placed his own reputation and integrity as an officer of the court into issue, "confronting the jury with a choice" between finding the defendant guilty, on the one hand, and finding an elected official a "big fool" who brought a case founded on perjury.  **Sweeper**, 450 A.2d at 1373; **see also Maloney**, 365 A.2d at 1243 (finding prejudice where the prosecutor injected, "as a deterrent to a finding of innocence, the idea that an elected district attorney [would] lose faith in our judicial system if guilt [was] not the verdict").

We discern no similar conduct by the Prosecutor here.  Rather, the Prosecutor's arguments presented a vigorous rebuttal to those of Appellant and her Co-Defendant.  We note, for example, that counsel for Appellant challenged the credibility of at least one witness for the Commonwealth:

> He lied.  Why?  Why?  Why did he have to lie?
>
> And if he lied then, I submit to you he was lying here.  Exaggeration.  Trying to make something sound worse than it was.

N.T., 4/28/14, at 180.  The Prosecutor's closing arguments were in fair response to counsel's remarks.  **See Sanchez**, 82 A.3d at 945.  Thus,

Appellant suffered no prejudice from these arguments. *See LaCava*, 666 A.2d at 231.[6]

### Cumulative Prejudice

Finally, Appellant contends that the cumulative impact of trial counsel's multiple errors "fatally prejudiced" her. Appellant's Br. at 31-32.

"[I]f multiple instances of deficient performance are found, the assessment of prejudice properly may be premised upon cumulation." *Commonwealth v. Hannibal*, 156 A.3d 197, 234 (Pa. 2016) (quoting *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1150 (Pa. 2012). Here, however, we have found no merit in any of Appellant's several claims of ineffective assistance of her trial counsel. As our Supreme Court has emphasized, "no number of failed claims may collectively warrant relief i[f] they fail to do so individually." *Id.* Appellant is entitled to no relief.

### Conclusion

_____

[6] Appellant also challenges the Prosecutor's criticism of certain defense exhibits. Appellant's Br. at 30-31 (quoting without attribution N.T., 4/28/14, at 195). According to Appellant, this criticism was an attempt by the Prosecutor to shift the burden of proof impermissibly to Appellant. *See* Appellant's Br. at 31. Appellant does not support her brief, conclusory remarks with citation to any pertinent authority. *See* Pa.R.A.P. 2119(a). Accordingly, we deem it waived. *See Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014). Absent waiver, we reject Appellant's characterization of the Prosecutor's argument, which did not address the burden of proof but rather the credibility of the evidence. *See* N.T., 4/28/14, at 195 ("[T]hey knew from the beginning that if they took this story, this piece of paper … [to] every expert in this case, [the experts] would just look at it and know that it was a tale and so they saved the time for you [*i.e.*, the jury] because they thought it would fool you.").

Each of Appellant's underlying claims—asserting evidentiary errors, improper jury instructions, and prosecutorial misconduct—are without merit. Appellant's trial counsel cannot be deemed ineffective for failing to pursue meritless claims. *Loner*, 836 A.2d at 132. Moreover, Appellant has failed to establish a question of fact with respect to these claims. Accordingly, we discern no legal error or abuse of discretion in the PCRA court's decision denying Appellant relief without a hearing. *See Jarosz*, 152 A.3d at 350; *Springer*, 961 A.2d at 1264.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/26/19